**Robert W. KELLEY, Individually and representative of the class**

v.

**METROPOLITAN COUNTY BOARD OF EDUCATION OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, et al.**

v.

**STATE OF TENNESSEE, et al.**

**Henry C. MAXWELL, Jr., Individually and representative of the class**

v.

**METROPOLITAN COUNTY BOARD OF EDUCATION OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, et al.**

**Civ. A. Nos. 2094, 2956.**

United States District Court, M.D. Tennessee, Nashville Division.

June 1, 1983.

Avon N. Williams, Jr., Richard Dinkins, Nashville, Tenn., for plaintiff.

William R. Willis, Jr., Marian F. Harrison, Nashville, Tenn., for defendant Metropolitan Bd. of Educ.

Frank J. Scanlon, Senior Asst. Atty. Gen., Nashville, Tenn., for third party defendant State of Tenn.

### MEMORANDUM

WISEMAN, District Judge.

On April 14, 1983, this Court held a hearing on the Board of Education's "Plan Submitted in Response to Opinion of the Court of Appeals for the Sixth Circuit," filed by the Board on April 8, 1983. Testimony explaining the plan, utilizing maps, statistics, and other exhibits, was offered by the Board, and opportunity for cross-examina-

---

tion and/or objection was afforded to the Plaintiffs and the State Defendants. No objections were made by either the Plaintiffs or the State Defendants.

From the testimony and exhibits submitted, the Court finds that the plan presented by the Board as described in its pleading of April 8, 1983, and the amendment thereto filed on April 14, 1983, meets fully the criteria set out by the Court of Appeals in its opinion on July 27, 1982, 687 F.2d 814 and the mandate issued pursuant thereto. Specifically, the pupil assignment plan submitted by the Board begins with the existing ratio of blacks to whites in the population as a starting point to maximize integration as defined by the Court of Appeals. That is, every effort has been made to draw zones for schools which will approximate the 33% black school population presently existing in the school system, with a deviation of 15% on either side of this percentage. Where deviations from this ratio have occurred and will occur, they are the result of factors beyond the Board's control, including but not limited to demographic considerations which would necessitate extraordinarily long transportation distances to the nearest concentration of black or white students to correct the imbalances. It is clear from the proof that the greatest possible effort has been made to maximize desegregation within the guidelines set forth by the Court of Appeals, and accordingly the plan is approved in its entirety.

The pleadings filed by the Board on April 8, 1983, and on April 14, 1983, along with the exhibits thereto and the maps, exhibits, and testimony describing the plan are incorporated into this decree by reference. In addition, the Agreement in Principle entered into by the Plaintiffs and the Board of Education and filed as Exhibit No. 2 in this cause, is incorporated into this decree by reference. The procedures contained therein for retention of jurisdiction by this Court supersede previous orders and restrictions which have governed this case. These procedures are ordered as follows:

"[Under the plan as approved, the Board of Education retains] the flexibility to make refinements where necessary in the plan to improve the integrity of zone lines, to improve feeder patterns, and to improve the utilization of buildings, so long as these improvements do not adversely impact the pupil assignment plan."

"[Jurisdiction will be retained] pending implementation of the long range plan, at which time, or five years after the entry of this order, whichever occurs first, any party may move the Court to have the system declared unitary and the case dismissed."

"[While jurisdiction is retained by this Court,] the Board shall report to the Court and counsel for all parties on or before January 1st of each year the following information:

1. An annual update of the Thirteen Year Analysis of Enrollment Patterns;

2. Numbers and use of portables during the current school year;

3. Any proposed new construction or expansion to house more students or regular programs; and

4. Any proposed zone changes with number of students involved by race, grade and school."

"Should any party have any objections to the information contained in the report, those objections must be filed within 45 days from the date the report is filed."

In addition to the pupil assignment plan, it should be noted that this Court has previously approved and ordered, and by this decree continues to approve and order the educational components contained in the previous plan (remediation, "Together We Can, Together We Will," black history, the middle school concept, and magnet school programs), and specifically approves the creation of a magnet school for the academically talented at Hume Fogg High School, a magnet school serving grades 5–8 at Caldwell Elementary School, and the Martin Luther King, Jr. Magnet School for the Health Sciences to be established at Pearl when the new Pearl-Cohn High School is completed.

Specific matters relating to faculty and personnel which are now governed by stipulation entered into between the parties on December 8, 1982, are not affected by this order.

An appropriate Order will enter.

### ORDER

In conformity with the Memorandum entered this day approving a new desegregation plan for Metropolitan Nashville and Davidson County, the plan as presented by the Metropolitan Nashville Board of Education on April 14, 1983, is hereby approved and ordered to be implemented.

### ADDENDUM I

### PLAN SUBMITTED IN RESPONSE TO OPINION OF THE COURT OF APPEALS FOR THE SIXTH CIRCUIT

On July 27, 1982, the Court of Appeals for the Sixth Circuit mandated a new pupil assignment plan in conformity with the guidelines set forth in the opinion of the Court. This Court set an April 1, 1983, deadline for the Board's submission of a new plan pursuant to the mandate.[1] The Board immediately developed criteria to be utilized by the Board's staff in the development of the plan.[2] These criteria approved by the Board of Education on February 1, 1983, and February 7, 1983, were as follows:

"1. The unitary school plan will encompass the entire county.

"2. The staff will be directed to develop a tier system or variation of tier system that is consistent with the Court Order, and utilizes sound educational principles.

"3. A child in grades one through twelve would not go to more than four schools during his experience, if his residence did not change.

"4. Feeder patterns of elementary to middle to high school be established which would allow as many students to remain together for as long as possible.

"5. A 'starting point' of the plan should be that each school has 33% black students with a 15% range on either side (18% to 48% black).

"6. Whenever possible, school zones that are integrated by 18% to 48% black without busing for racial balance should be established.

"7. The goal of the plan should be to distribute the burden of busing as equitably as possible.

"8. The planners are directed to consider all buildings, full utilization of presently used buildings based on projected enrollment, the option of reopening buildings not now in use, expansion of these buildings, and the possible addition of new buildings which will facilitate the conservation of time, distance and fuel and which will facilitate the other major criteria of the plan.

"9. Priority consideration will be given to the utilization of existing facilities prior to recommendations for construction of new buildings.

"10. Kindergarten students be exempt from the pupil assignment plans on the basis that the time and distance of mandatory travel would risk the health, safety and welfare of the children and would impinge on the educational process.

"11. A 'starting point' of the plan should be that students in grades 1–6 not be transported more than 20 miles for racial balance purposes."

As the staff developed proposals and alternatives, public Board meetings were held

---

1. A one week extension was granted orally by the District Court during a conference call with all parties.

2. A biracial group of staff members was designated as a Pupil Assignment Planning Team: Ray G. Osborne, Chairman, Director of the Department of Zoning and Real Property; Thomas G. Caulkins, Coordinator of Group Testing and Data Collection, Department of Research and Evaluation; George C. Johnson, Teacher, Industrial Arts, Two Rivers Junior High School; Kenneth McKay, Principal, Cumberland Elementary School; Dr. Mildred Saffell-Smith, Assistant Principal, West End Junior High School; William J. Stanfield, Principal, Overton Comprehensive High School; and Dr. Bill M. Wise, Assistant Superintendent, Division of Facility Development and Services.

wherein the Board considered and approved in concept high school, junior high school, and elementary school portions of a pupil assignment plan. Both the Plaintiffs and the State Defendants were invited to these hearings and to individual briefings on the plan. The Plaintiffs' counsel attended one or more of these meetings and was also briefed individually. The State Defendants initially refused the opportunity to be briefed, only accepting the invitation on March 25, 1983. As ordered by this Court during a preliminary status conference, the Board entered discussions with the Plaintiffs, which discussions ultimately led to the Agreement in Principle, attached hereto as Exhibit A. A majority of the members of the Board of Education voted to accept the Agreement in Principle on March 29, 1983.[3] Following approval of the Agreement in Principle, the staff made the necessary modifications to the proposals before the Board. Those modifications are incorporated in the chart, Exhibit B, and the elementary school map, Exhibit C, the 7–8 school interim map, Exhibit D, the 7–8 school long range map, Exhibit E, the high school interim map, Exhibit F, and the high school long range map, Exhibit G.

The plan, as modified by the Agreement in Principle, was adopted by the Board on March 29, 1983.

## I. ELEMENTARY SCHOOLS.

The elementary school plan is depicted in the chart, Exhibit B, pages 1–7, and the elementary school map, Exhibit C. With the exception of 11 elementary schools serving grades 1–6, which are the result of naturally integrated neighborhoods, the schools are paired and clustered as indicated to produce the racial balance indicated. As with previous plans, time constraints have prohibited the drawing of internal zone lines in these clusters. The Board's staff is in the process of drawing these lines in conformity with the Agreement in Principle and the racial percentages reflected in the cluster or pairing as a whole.

With a few exceptions, the plan's statistics depict clearly the elementary proposal. Two darkly shaded areas of the map require further explanation. In the Wharton and Glenn clusters, some students would be required to ride the bus for distances greater than one hour to reach their paired 5–6 grade centers (Wharton or Glenn). As a result, these students in the shaded yellow (Wharton) and brown (Glenn) areas will be assigned to the closest school in grades 5–6. This will require the establishment of grades 5–6 at some of the outlying schools in these clusters to serve these students. For the school year 1983–1984 it is projected that 122 students in the Glenn cluster and 181 students in the Wharton cluster will be assigned in this fashion.

Pursuant to the Agreement in Principle, the Board has proposed to make Caldwell Elementary School a magnet school, serving some combination of elementary grades. Plans are not yet finalized on the type of magnet to be established at Caldwell. Jere Baxter Elementary School will be used in lieu of Caldwell for grades 5–6 in the cluster with Bellshire, Chadwell, and Stratton.

Cameron will be retained as a 5–8 grade middle school in conformity with the Agreement in Principle and with the District Court's request to continue middle school plans where possible. Carter Lawrence will be opened as a 5–6 grade center, making this retention possible. Johnson will also be reopened for grades 5–6, and Burton, Donelson, Fehr, Ford Greene, Richland, Stanford, Martha Vaught, and Woodbine will be closed.

## II. 7–8 GRADE CENTERS.

Space considerations have dictated the development of an interim and long range plan for 7–8 grade students. The interim plan is set forth on the chart, Exhibit B, page 9, and on the map, Exhibit D. The long range plan is set forth on the chart,

---

**3.** The motion was made by Mr. Isaac Northern and seconded by Ms. Dorothy Gupton to accept the Agreement in Principle. The vote was six for acceptance (Mr. Kent Weeks, Mr. Vern Denney, Mr. Dewey Branstetter, Mr. Isaac Northern, Ms. Pat Bentrup, and Ms. Dorothy Gupton), and three against (Mr. Charles Gann, Mr. Dan Alexander, and Mr. Tom Hightower).

Exhibit B, page 10, and on the map, Exhibit E.

Prior to the building of the Goodlettsville-Madison High School, the 7–8 grade plan north of the Cumberland River cannot be fully implemented. (See Exhibit B, pages 9–10, and Exhibits D and E). The building of this school will permit utilization of Goodlettsville and DuPont for grades 7–8. When the long range plan is implemented, the East zone will be divided between East and Meigs pursuant to the Agreement in Principle.[4]

Under the long range plan, Donelson Junior High School will be closed. If Antioch High School must be closed in 1986 because it does not reach the requisite 18% black student population at that time (see discussion, *infra*), then it will be used as a junior high school for grades 7–8 in place of Apollo as demonstrated on the long range map. (Exhibit E). If Antioch is not closed, the interim plan in this area will remain in effect during the long range, with Apollo serving grades 7–9 as shown on the interim map. (Exhibit D).

Under both interim and long range plans, Cameron will be retained as a 5–8 grade middle school (see discussion, *supra*).

III. HIGH SCHOOLS.

With minor exceptions, the high school plan remains as ordered by the Court of Appeals and previously approved by the District Court. The building of the Pearl-Cohn and Goodlettsville-Madison High Schools require both interim and long range high school plans, with the interim plan being depicted in the chart, Exhibit B, page 12, and the map, Exhibit F. The long range plan is set forth on the chart, Exhibit B, page 13, and the map, Exhibit G.

The Antioch and Pearl-Cohn areas of the plan require additional explanation. Antioch High School, with its zone as shown on the interim map, Exhibit F, will remain open if, by June 1, 1986, this zone produces within its boundaries an 18% black student population. The previously approved plan ordered the closure of Antioch primarily due to lack of accessibility to black students. Under the new proposal, no noncontiguous zones will be established for Antioch. If Antioch High School fails to achieve the requisite racial ratio by 1986, the school will be closed as a high school and its students will be divided between Glencliff and Overton as the District Court has ordered previously. This division is shown on the long range map, Exhibit G. If capacities at Glencliff and Overton do not permit the housing of all Antioch students, the noncontiguous zone in the Haywood and Cole Elementary School areas as shown on the long range map will be zoned to Hillsboro. (Exhibit G).

Prior to the completion of the Pearl-Cohn Comprehensive High School, the two current high schools, Pearl and Cohn, will be operated as a single unit in all respects during the interim. Under this plan, Pearl will house grades 9–10, and Cohn will house grades 11–12.

Under the long range plan, Cohn, Madison, East, and DuPont will no longer be used as high schools. As discussed *supra,* the future of Antioch as a high school will depend upon its racial makeup. After completion of the Pearl-Cohn Comprehensive High School, Pearl will be opened as the Martin Luther King, Jr. Open-Zoned Magnet School for the Health Sciences. In the long range, the plan calls for using East, DuPont, and possibly Antioch as junior high schools.

In addition to the zoned schools, the now open-zoned Hume Fogg High School will be changed in 1983–1984 to an open-zoned magnet school for academically talented students. This magnet school will begin with grades 9 and 10, and will add a grade a year until grade 12 is attained. Hume Fogg is projected to replace West End as the site of the academic magnet school, approved by previous Court orders. This change is primarily based on the fact that

4. The long range map for grades 7–8 indicates that these two schools will serve students in these grades. However, as with the elementary schools, the internal zone lines in this district have not been drawn. (See Exhibit E).

Hume Fogg is a more centrally located facility and more easily accessible by public transportation.

It should be noted that with all high school zoning changes for the coming year, the Board has announced a policy permitting seniors to graduate from the school to which they are now zoned and enrolled, if the student provides his or her own transportation.[5]

## IV. IMPLEMENTATION OF PLAN AND FUTURE REQUIREMENTS.

In addition to other detailed provisions, the Agreement in Principle sets forth several rules governing the future operation of the school system under the plan. These include, among others:

"It is further agreed that the plan will provide the Board of Education the flexibility to make refinements where necessary to improve the integrity of zone lines, to improve feeder patterns, and to improve the utilization of buildings, so long as these improvements do not adversely impact the pupil assignment plan.

"It is further agreed that the plan will call for the retention of jurisdiction pending implementation of the long range plan, at which time, or five (5) years after the entry of the Order approving the plan that is finally implemented, whichever occurs first, any party may move the Court to have the system declared unitary and the case dismissed.

"During the period jurisdiction is retained, the Board shall report to the Court and counsel for all parties on or before January 1st, the following information:

"1. An annual update of the Thirteen Year Analysis of Enrollment Patterns;

"2. Numbers and use of portables during the current school year.

"3. Any proposed new construction or expansion to house more students or regular programs; and

"4. Any projected zone changes with number of students involved by race, grade and school.

"Should any party have any objections to the information contained in the report, those objections must be filed within 45 days from the date the report is filed."

## V. FINANCIAL CONSIDERATIONS.

The Defendant Board of Education will file a cost analysis regarding this pupil assignment plan in the near future. At the same time, the Board will file an appropriate pleading in its action against the State Defendants, setting forth the costs and expenses in which the Board will seek participation by the State Defendants.

## CONCLUSION

The Defendant Board of Education asserts that this pupil assignment plan is in conformity with the mandate of the Court of Appeals and should be approved.

Defendant Board of Education requests a speedy hearing on this plan in light of the many tasks to be accomplished before school opens in August, 1983. Specifically, this plan involves the repairing of Carter Lawrence and Johnson schools, the drawing and refinement of interior zone lines, the drawing of bus routes, the extensive movement of furniture and books, the placement of the educational components, the reassignment of teachers, the installation of the magnet school programs, and the obtaining of sufficient funds for construction of new facilities. Each of these projects and others, including the dissemination of information to the public regarding the specific pupil assignments in the total plan will consume substantial time. A delay in the approval of any plan may well have an adverse impact on the implementation of that plan.

WHEREFORE, the Board of Education prays the Court for immediate approval of the plan set forth herein.

---

**5.** This does not apply to the Pearl-Cohn paired school during the interim since grade 12 will only be available at the Cohn facility.

Respectfully submitted,
WILLIS & KNIGHT
By /s/ William R. Willis, Jr.
William R. Willis, Jr.
By /s/ Marian F. Harrison
Marian F. Harrison
215 Second Avenue, North
Nashville, Tennessee 37201
Attorneys for Defendant Board of Education

## EXHIBIT A

## AGREEMENT IN PRINCIPLE

WHEREAS, the Plaintiffs and the Defendants Board of Education, et al., hereinafter "Board," have entered into negotiations for the development of a desegregation plan pursuant to the Order of the Sixth Circuit Court of Appeals on July 27, 1982; and

WHEREAS, the Plaintiffs and the Board find that they are in agreement concerning the basic components of a proposed pupil assignment plan.

NOW, THEREFORE, it is agreed by the Board that they will present to the District Court for approval the plan embodied in the chart (Exhibit B), the elementary school map (Exhibit C), the junior high maps (Exhibits D and E), and the high school maps (Exhibits F and G). It is further agreed by the Plaintiffs that they will not object to said plan upon its presentation. This plan among other things:

1. Creates school zones as indicated;

2. Leaves Antioch High School open for three years beginning with the school year 1983–84, provided that Antioch High School zone shown on the map, Exhibit F, shall be closed and eliminated by the school year 1986–87 unless by June 1, 1986, such zone produces within its boundaries an 18% black Antioch High School population. If such elimination is necessary, the students from Antioch are projected to be divided first between Glencliff and Overton, if capacities permit, and if not, the non-contiguous zone, as indicated on the long range map, Exhibit G, is projected to be established for Hillsboro.

3. Provides that students in the Glenn and Wharton zones shaded on the elementary map, Exhibit C, will remain at their closest schools for grades 5–6, in addition to grades 1–4, in light of the distance involved in the transportation to their clustered 5–6 centers.

4. Provides that Carter Lawrence will be opened as a 5–6 school, with Cameron remaining a 5–8 middle school, with zone as shown on the junior high map.

5. Provides that Meigs Junior High School and East Senior High School will be retained as 7–8 grade centers under the long range plan.

6. Provides that the Pearl-Cohn paired high school during the interim will be operated as a single entity in all respects.

7. Provides that the new Pearl-Cohn High School will be built on schedule on the site of the combined Washington Junior High and Ford Greene Elementary School properties, plus any necessary contiguous acquired land.

8. Provides that once a new Pearl-Cohn High School is built, the existing Pearl High School building will be opened as the Martin Luther King, Jr. Open-Zoned Magnet School for the Health Sciences for grades 9–12, with highest standards in academic, technical excellence, and admission, and projected to have an enrollment of approximately 400 students or more. Students will provide their own transportation.

9. Provides that Caldwell Elementary School will remain open, but the Board may place an Open-Zoned Elementary Magnet School there, with elementary grades of its selection along with the existing kindergarten program. If an Open-Zoned Magnet School is established, transportation will be provided by the students.

10. Provides that the Union Hill Elementary School will remain open for grades 1–4, and that the assignment of students from this area in grades 5–6, 7–8, and 9–12 will remain as shown in the respective plans presented by the staff.

11. Provides that children in grades 1 and 2 within the Inglewood, Napier, and Berry clusters will attend the aforementioned schools, and children in grades 3–6 will attend the other schools in these clusters. In the Lockeland cluster, Warner and Kirkpatrick will serve grades 1–4, and Lockeland will serve grades 5–6. In the Cumberland cluster, Cumberland will serve grades 1–3, and Bordeaux and Wade will serve grades 4–6.

It is further agreed that in drawing the internal zone lines of elementary schools within the clusters, no school zone shall be designed to fall without the Court-ordered guidelines of 18% to 48% black other than in those clusters where the total population of the cluster falls outside those ratios. In the latter clusters, the racial ratios shall be equalized as between all schools therein as far as is practicable.

Plaintiffs do not intend to approve as a general proposition any racial proportions in said plan which deviate substantially from Court guidelines, but have approved the total plan for Nashville, Davidson County in view of Board claims that said deviations are necessary to reach this agreement.

Any magnet school will be designed to attract and stimulate a voluntary cross section of students from all racial groups in Metropolitan Davidson County.

It is further agreed that the plan will provide the Board of Education the flexibility to make refinements where necessary in the plan to improve the integrity of zone lines, to improve feeder patterns, and to improve the utilization of buildings, so long as these improvements do not adversely impact the pupil assignment plan.

It is further agreed that the plan will call for the retention of jurisdiction pending implementation of the long range plan, at which time, or five (5) years after the entry of the Order approving the plan that is finally implemented, whichever occurs first, any party may move the Court to have the system declared unitary and the case dismissed.

During the period jurisdiction is retained, the Board shall report to the Court and counsel for all parties on or before January 1st, the following information:

1. An annual update of the Thirteen Year Analysis of Enrollment Patterns;

2. Numbers and use of portables during the current school year.

3. Any proposed new construction or expansion to house more students or regular programs; and

4. Any projected zone changes with number of students involved by race, grade and school.

Should any party have objections to the information contained in the report, those objections must be filed within 45 days from the date the report is filed.

It is further agreed that both the Plaintiffs and the Defendants will vigorously defend this pupil assignment plan in Court, should it be attacked by any party or intervenor, except that the Plaintiffs are not committed to financial responsibility for such defense.

It is further agreed that this proposal is not divisible and must be accepted by both parties in total to become effective.

METROPOLITAN BOARD OF PUBLIC EDUCATION
By /s/ Kent M. Weeks
Kent M. Weeks, Chairman
ROBERT W. KELLEY, et al.
By /s/ Avon N. Williams, Jr.
Avon N. Williams, Jr., Attorney

## EXHIBIT B
ELEMENTARY SCHOOLS – GRADES 1–6          March 29, 1983

| SCHOOL AND/OR CLUSTER | GRADE LEVEL | BLACK (1982) | OTHER (1982) | TOTAL (1982) | % BLACK (1982) | BUILDING CAPACITY PERM. | PORT. | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Cumberland | 1–3 | 174 | 160 | 334 | 52% | 547 | 50 | 597 |
| Bordeaux | 4–6 | 215 | 140 | 355 | 61% | 356 | 25 | 381 |
| Wade | 4–6 | | | | | 113 | 125 | 238 |
| | | | | | | 469 | — | 619 |

## EXHIBIT B

ELEMENTARY SCHOOLS–GRADES 1–6                    March 29, 1983

| SCHOOL AND/OR CLUSTER | GRADE LEVEL | BLACK (1982) | OTHER (1982) | TOTAL (1982) | % BLACK (1982) | BUILDING CAPACITY | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | PERM. | PORT. | TOTAL |
| Kings Lane | 5–6 | 264 | 190 | 454 | 58% | 581 | 0 | 581 |
| Alex Green | 1–4 | | | | | 94 | 250 | 344 |
| Joelton | 1–4 | 425 | 365 | 790 | 54% | 225 | 50 | 275 |
| Morny | 1–4 | | | | | 188 | 0 | 188 |
| | | | | | | 507 | — | 807 |
| Brick Church | 5–6 | 159 | 259 | 418 | 38% | 338 | 200 | 538 |
| Goodlettsville | 1–4 | | | | | 338 | 75 | 413 |
| Old Center | 1–4 | 274 | 451 | 725 | 38% | 338 | 0 | 338 |
| Union Hill | 1–4 | | | | | 113 | 50 | 163 |
| | | | | | | 789 | — | 914 |
| Haynes | 5–6 | 200 | 243 | 443 | 45% | 469 | 0 | 469 |
| Amqui | 1–4 | | | | | 356 | 125 | 481 |
| Gateway | 1–4 | 356 | 465 | 821 | 43% | 188 | 150 | 338 |
| | | | | | | 544 | — | 819 |
| Gra-Mar | 1–6 | 70 | 227 | 297 | 24% | 263 | 50 | 313 |
| Tom Joy | 1–6 | 168 | 305 | 473 | 36% | 413 | 275 | 688 |
| Shwab | 1–6 | 145 | 245 | 390 | 37% | 300 | 225 | 525 |
| Jere Baxter | 5–6 | 194 | 245 | 439 | 44% | 413 | 25 | 438 |
| Bellshire | 1–4 | | | | | 338 | 0 | 338 |
| Chadwell | 1–4 | 462 | 534 | 996 | 46% | 300 | 25 | 325 |
| Stratton | 1–4 | | | | | 460 | 175 | 645 |
| | | | | | | 1098 | — | 1308 |
| Glenn | 5–6 | 122 | 182 | 304 | 40% | 338 | 175 | 513 |
| DuPont | 1–4 | | | | | 450 | 75 | 525 |
| Neely's Bend | 1–4 | 229 | 618 | 847 | 27% | 300 | 75 | 375 |
| | | | | | | 750 | — | 900 |
| Cotton | 1–6 | 96 | 146 | 242 | 40% | 263 | 100 | 363 |
| Ross | 1–6 | 109 | 169 | 278 | 39% | 206 | 150 | 356 |
| Inglewood | 1–2 | 126 | 273 | 399 | 32% | 413 | 0 | 413 |
| Dalewood | 3–6 | | | | | 394 | 0 | 394 |
| Dan Mills | 3–6 | 233 | 506 | 739 | 32% | 300 | 50 | 350 |
| | | | | | | 694 | — | 744 |
| Cora Howe | 1–6 | 196 | 276 | 472 | 42% | 450 | 125 | 575 |
| Rosebank | 1–6 | 93 | 231 | 324 | 29% | 356 | 0 | 356 |
| Lockeland | 5–6 | 221 | 200 | 421 | 53% | 375 | 75 | 450 |
| Kirkpatrick | 1–4 | | | | | 263 | 150 | 413 |
| Warner | 1–4 | 453 | 501 | 954 | 48% | 694 | 75 | 769 |
| | | | | | | 957 | — | 1182 |

## EXHIBIT B

ELEMENTARY SCHOOLS–GRADES 1–6　　　　March 29, 1983

| SCHOOL AND/OR CLUSTER | GRADE LEVEL | BLACK (1982) | OTHER (1982) | TOTAL (1982) | % BLACK (1982) | BUILDING CAPACITY PERM. | PORT. | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Wharton | 5–6 | 243 | 406 | 649 | 37% | 975 | 0 | 975 |
| Andrew Jackson | 1–4 | | | | | 338 | 100 | 438 |
| Dodson | 1–4 | 495 | 1046 | 1541 | 32% | 550 | 275 | 825 |
| Hermitage | 1–4 | | | | | 450 | 0 | 450 |
| | | | | | | 1338 | — | 1713 |
| Buena Vista | 5–6 | 89 | 364 | 453 | 20% | 431 | 0 | 431 |
| Hickman | 1–4 | | | | | 412 | 0 | 412 |
| McGavock | 1–4 | 173 | 713 | 886 | 20% | 375 | 0 | 375 |
| Pennington | 1–4 | | | | | 375 | 0 | 375 |
| | | | | | | 1162 | — | 1162 |
| Napier | 1–2 | 111 | 365 | 476 | 23% | 506 | 0 | 506 |
| Margaret Allen | 3–6 | | | | | 281 | 100 | 381 |
| Glengarry | 3–6 | | | | | 225 | 0 | 225 |
| Glenview | 3–6 | 255 | 804 | 1059 | 24% | 375 | 275 | 650 |
| Paragon Mills | 3–6 | | | | | 450 | 175 | 625 |
| | | | | | | 1331 | — | 1881 |
| Cameron | 5–8 | 226 | 545 | 771 | 29% | 1094 | 0 | 1094 |
| Lakeview | 1–4 | 253 | 558 | 811 | 31% | 450 | 375 | 825 |
| Carter Lawrence | 5–6 | 146 | 309 | 455 | 32% | 637 | 0 | 637 |
| Cole | 1–4 | 244 | 531 | 775 | 31% | 450 | 375 | 825 |
| Johnson | 5–6 | 51 | 218 | 269 | 19% | 394 | 0 | 394 |
| Una | 1–4 | 83 | 421 | 504 | 17% | 356 | 175 | 531 |
| Whitsitt | 1–6 | 55 | 274 | 329 | 17% | 356 | 50 | 406 |
| Berry | 1–2 | 55 | 225 | 280 | 20% | 263 | 0 | 263 |
| Glencliff | 3–6 | 87 | 426 | 513 | 17% | 563 | 0 | 563 |
| Fall-Hamilton | 1–6 | 111 | 200 | 311 | 36% | 300 | 50 | 350 |
| Rose Park | 5–6 | 172 | 540 | 712 | 24% | 690 | 0 | 690 |
| Binkley | 1–4 | | | | | 431 | 0 | 431 |
| Crieve Hall | 1–4 | | | | | 338 | 0 | 338 |
| Haywood | 1–4 | 327 | 983 | 1310 | 25% | 375 | 75 | 450 |
| Tusculum | 1–4 | | | | | 431 | 100 | 531 |
| | | | | | | 1575 | — | 1750 |
| Glendale | 5–6 | 41 | 182 | 223 | 18% | 263 | 75 | 338 |
| Granbery | 1–4 | 69 | 298 | 367 | 19% | 412 | 100 | 512 |
| Stokes | 5–6 | 98 | 162 | 260 | 38% | 300 | 25 | 325 |
| Julia Green | 1–4 | | | | | 300 | 75 | 375 |
| Percy Priest | 1–4 | 176 | 278 | 454 | 39% | 319 | 0 | 319 |
| | | | | | | 619 | — | 694 |
| Eakin | 1–6 | 70 | 199 | 269 | 26% | 356 | 125 | 481 |

## EXHIBIT B

ELEMENTARY SCHOOLS–GRADES 1–6       March 29, 1983

| SCHOOL AND/OR CLUSTER | GRADE LEVEL | BLACK (1982) | OTHER (1982) | TOTAL (1982) | % BLACK (1982) | BUILDING CAPACITY | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | PERM. | PORT. | TOTAL |
| Head | 5–6 | 213 | 400 | 613 | 35% | 675 | 0 | 675 |
| Harpeth Valley | 1–4 | | | | | 300 | 75 | 375 |
| H. G. Hill | 1–4 | 475 | 804 | 1279 | 37% | 394 | 0 | 394 |
| Sylvan Park | 1–4 | | | | | 412 | 0 | 412 |
| Westmeade | 1–4 | | | | | 300 | 125 | 425 |
| | | | | | | 1406 | — | 1606 |
| Park Avenue | 1–6 | 104 | 121 | 225 | 46% | 263 | 0 | 263 |
| Early | 5–6 | 97 | 171 | 268 | 36% | 319 | 0 | 319 |
| Brookmeade | 1–4 | 135 | 331 | 466 | 29% | 300 | 100 | 400 |
| Gower | 1–4 | | | | | 188 | 125 | 313 |
| | | | | | | 488 | — | 713 |
| McKissack | 5–6 | 220 | 296 | 516 | 43% | 675 | 50 | 725 |
| Charlotte Park | 1–4 | | | | | 488 | 50 | 538 |
| Cockrill | 1–4 | 512 | 647 | 1159 | 44% | 375 | 0 | 375 |
| McCann | 1–4 | | | | | 394 | 0 | 394 |
| | | | | | | 1257 | — | 1307 |
| Caldwell Elementary Magnet | | | | | | 563 | 25 | 588 |

March 29, 1983

### PRESENT 7-8 GRADE CENTERS

| School | Grades | Capacity | Present Enrollment | Percent Black |
|---|---|---|---|---|
| Joelton | 7–8 | 894 | 514 | 48% |
| Ewing Park | 7–8 | 663 | 556 | 77% |
| Goodlettsville | 7–12 | 832 | 915 (7–12) | 2% |
| Neelys Bend | 7–9 | 674 | 715 | 7% |
| DuPont Jr. | 7–9 | 619 | 568 | 4% |
| Highland Heights | 7–8 | 727 | 484 | 53% |
| Meigs | 7–8 | 850 | 648 | 62% |
| Litton | 7–8 | 688 | 785 | 30% |
| Donelson | 7–8 | 1058 | 784 | 17% |
| Two Rivers | 7–8 | 1153 | 450 | 34% |
| Wright | 7–8 | 926 | 846 | 32% |
| Apollo | 7–9 | 851 | 1136 | 9% |
| McMurray | 7–8 | 926 | 645 | 25% |
| Moore | 7–8 | 770 | 454 | 53% |
| Bellevue | 7–8 | 983 | 486 | 24% |
| Bass | 7–8 | 778 | 481 | 39% |
| West End | 7–8 | 717 | 513 | 33% |

March 29, 1983

### 7-8 GRADE CENTERS INTERIM PLAN

| School | Grades | Capacity | Estimated Enrollment | Percent Black |
|---|---|---|---|---|
| Joelton | 7–8 | 894 | 509 | 55% (LR) |
| Ewing Park | 7–8 | 663 | 576 | 64% |
| Goodlettsville | 7–12 | 832 | 837 (7–12) | 2% |
| | | | 335 (7–8) | 1% |
| Neelys Bend | 7–8 | 674 | 536 | 8% |
| DuPont Jr. | 7–9 | 619 | 600 | 4% (NC) |
| Highland Heights | 7–8 | 727 | 484 | 53% (NC) |
| Meigs | 7–8 | 850 | 648 | 62% (NC) |
| Litton | 7–8 | 688 | 785 | 30% (NC) |
| Donelson | 7–8 | 1058 | 713 | 15% |

### 7-8 GRADE CENTERS INTERIM PLAN

| School | Grades | Capacity | Estimated Enrollment | Percent Black |
|---|---|---|---|---|
| Two Rivers | 7–8 | 1153 | 422 | 33% |
| Wright | 7–8 | 926 | 833 | 31% |
| Apollo | 7–9 | 851 | 1136 | 9% |
| McMurray | 7–8 | 926 | 671 | 26% |
| Moore | 7–8 | 770 | 495 | 30% (LR) |
| Bellevue | 7–8 | 983 | 634 | 28% (LR) |
| Bass | 7–8 | 778 | 417 | 51% (LR) |
| West End | 7–8 | 717 | 393 | 50% (LR) |

March 29, 1983

### 7-8 GRADE CENTERS LONG RANGE PLAN

| School | Grades | Capacity | Estimated Membership | Percent Black |
|---|---|---|---|---|
| Joelton | 7–8 | 894 | 509 | 55% |
| Ewing Park | 7–8 | 663 | 472 | 56% |
| Goodlettsville | 7–8 | 832 | 463 | 24% |
| Neelys Bend | 7–8 | 674 | 387 | 18% |
| DuPont Jr. (bldg.) | 7–8 | 619 | 351 | 18% |
| Highland Heights | 7–8 | 727 | 408 | 48% |
| East Jr. (bldg.) | 7–8 | 856 | 403 | 49% |
| Meigs | 7–8 | 850 | 403 | 49% |
| Litton | 7–8 | 688 | 583 | 36% |
| DuPont Sr. (bldg.) | 7–8 | 619 | 603 | 18% |
| Two Rivers | 7–8 | 1153 | 669 | 22% |
| Wright | 7–8 | 926 | 718 | 20% |
| Antioch | 7–8 | 1174 | 889 | 22% |
| McMurray | 7–8 | 926 | 702 | 25% |
| Moore | 7–8 | 770 | 495 | 30% |
| Bellevue | 7–8 | 983 | 634 | 28% |
| Bass | 7–8 | 778 | 417 | 51% |
| West End | 7–8 | 717 | 393 | 50% |

March 29, 1983

PRESENT HIGH SCHOOLS

| School | Grades | Capacity | Present Enrollment | Percent Black |
|--------|--------|----------|--------------------|---------------|
| Whites Creek | 9–12 | 1885 | 1675 | 58% |
| Goodlettsville | 7–12 | 832 | 915 | 2% |
| Madison | 10–12 | 1029 | 625 | 3% |
| Maplewood | 9–12 | 1023 | 1295 | 70% |
| Stratford | 9–12 | 1454 | 1199 | 31% |
| East | 9–12 | 1712 | 848 | 66% |
| DuPont | 10–12 | 784 | 888 | 4% |
| McGavock | 9–12 | 2697 | 2081 | 24% |
| Glencliff | 9–12 | 1791 | 1502 | 33% |
| Antioch | 10–12 | 1174 | 921 | 6% |
| Overton | 9–12 | 1629 | 1458 | 28% |
| Hillsboro | 9–12 | 1751 | 1052 | 29% |
| Hillwood | 9–12 | 2190 | 1404 | 18% |
| Cohn | 9–12 | 1136 | 711 | 31% |
| Pearl | 9–12 | 1295 | 383 | 94% |

March 29, 1983

INTERIM HIGH SCHOOL PLAN 1983–1984

| School | Grades | Capacity | Estimated Enrollment * | Percent Black |
|--------|--------|----------|------------------------|---------------|
| Whites Creek | 9–12 | 1885 | 1784 | 60% |
| Goodlettsville | 7–12 | 832 | 862 | 2% |
| Madison | 9–12 | 1029 | 876 | 6% |
| Maplewood | 9–12 | 1023 | 1092 | 69% |
| Stratford | 9–12 | 1454 | 1148 | 32% |
| East | 9–12 | 1712 | 933 | 68% |
| DuPont | 10–12 | 784 | 860 | 4% |
| McGavock | 9–12 | 2697 | 1857 | 25% |
| Glencliff | 9–12 | 1791 | 1395 | 30% |
| Antioch | 10–12 | 1174 | 972 | 7% |
| Overton | 9–12 | 1629 | 1228 | 22% |
| Hillsboro | 9–12 | 1751 | 1065 | 27% |
| Hillwood | 9–12 | 2190 | 1226 | 29% |
| Pearl-Cohn | 9–12 | – – | 1418 | 48% |

* Estimated enrollment is number of students currently living in zone.

March 29, 1983

LONG RANGE HIGH SCHOOL PLAN

| School | Grades | Capacity | Estimated Enrollment * | Percent Black |
|--------|--------|----------|------------------------|---------------|
| Whites Creek | 9–12 | 1885 | 1784 | 60% |
| Goodlettsville-Madison | 9–12 | – – | 2055 | 23% |
| Maplewood | 9–12 | 1023 | 1249 | 58% |
| Stratford | 9–12 | 1454 | 1510 | 41% |
| McGavock | 9–12 | 2697 | 2949 | 17% |
| Glencliff | 9–12 | 1791 | 2025 | 23% |
| Overton | 9–12 | 1629 | 1901 | 17% |
| Hillsboro | 9–12 | 1751 | 1065 | 27% |
| Hillwood | 9–12 | 2190 | 1226 | 29% |
| Pearl-Cohn | 9–12 | – – | 1418 | 48% |

* Estimated enrollment is number of students currently living in zone.

## ADDENDUM II

## AMENDMENT TO "PLAN SUBMITTED IN RESPONSE TO OPINION OF THE COURT OF APPEALS FOR THE SIXTH CIRCUIT"

The Defendant Board of Education hereby amends its pleading previously filed on April 8, 1983, to reflect the exact language contained in the Board minutes relating to rising seniors. Specifically, the paragraph immediately preceding Section IV on page 9 of the pleading should read:

"It should be noted that with all high school zoning changes for the coming year, the Board has announced a policy permitting rising seniors to graduate from the school they are now attending, if the student provides his or her own transportation."

This amendment makes the paragraph conform to the language contained in the Board minutes of February 10, 1983, as follows:

"... [A]ll rising seniors for the 1983–84 school year be given the option of graduating from the school they are attending in 1982–83; transportation will not be provided by the Board for out-of-zone seniors who choose this option."

A copy of these minutes is attached hereto as Exhibit A.

Respectfully submitted,

WILLIS & KNIGHT

By /s/ William R. Willis, Jr.
William R. Willis, Jr.

By /s/ Marian F. Harrison
Marian F. Harrison
215 Second Avenue, North
Nashville, Tennessee 37201
Attorneys for Defendant Board of Education